FRANCES GILBERT
319 E. Fillmore St.
Tempe, AZ 85281-1162
480-452-5325

Plaintiff Pro Se

```
X  FILED      ___ LODGED
___ RECEIVED  ___ COPY

      APR 2 7 2010

CLERK U S DISTRICT COURT
  DISTRICT OF ARIZONA
BY _____ DEPUTY
```

# UNITED STATES DISTRICT COURT
for the
## DISTRICT OF ARIZONA

| | |
|---|---|
| Frances Gilbert, )<br><br>　　　Plaintiff )<br><br>　　v. )<br><br>Maricopa County Superior Court Department )<br>of Juvenile Probation ("State of Arizona"), )<br>Maricopa County, Grace Arriaga, Carol Boone, )<br>Gary Bridget, Debra Hall, Phillip Hanley, )<br>Geoff Hilberg, Annette Lemond, Victor )<br>Marino, Matthew Michalak, Barbara Mundell, )<br>Marcus Reinkensmeyer, Charlotte Shrum, )<br>Eileen Willet, and Chad Williams. )<br><br>　　　Defendants )  | **CIV'10 0919 PHX**　　DKD<br><br>Civil Action No.<br><br><br>(Employment Discrimination)<br>(Violation of Civil Rights)<br>(Hostile Work Environment)<br>(Retaliation)<br>(Age Discrimination)<br>(American's With Disabilities)<br><br><br>(Jury Trial Requested) |

　　　Comes now Plaintiff and for her complaint against Defendants and each of them as

alleges as follows:

### JUSIDICTION/PARTIES

　　　1.　　　This court has jurisdiction of this action since it arises under the laws of the

United States, namely its employment discrimination and civil rights law.

　　　2.　　　Plaintiff is a resident of this district, and was so when the events below giving rise

to her claim arose; Plaintiff is a 53 year old female.

1

3.    Defendants are either residents of this state and district, government entities within or of this state or caused the events below in this state and district giving rise to Plaintiff's claim.

4.    With respect to the events below, defendants Arriaga, Boone, Bridget, Hall, Hanley, Hilberg, Lemond, Marino, Michalak, Mundell, Reikensmeyer, Shrum, Willet, and Williams were at all times acting both within and without their capacities as employees of defendant Maricopa County Superior Court Department of Juvenile Probation ("State of Arizona"); all the above defendants were and are, with the exception of defendants Arriaga, and Boone, who have since retired, employees of Maricopa County Superior Court Department of Juvenile Probation ("State of Arizona").

5.    All administrative remedies have been exhausted in this matter, to wit, plaintiff was issued and received "right to sue" letters from the U.S, Equal Employment Opportunity Commission, 90 days or less prior to the filing of this action.  The complaints are attached as Exhibit A.

## SUBSTANTIVE ALLEGATIONS

6.    Plaintiff was employed by Maricopa County Superior Court Department of Juvenile Probation ("State of Arizona") on or about August 23, 2004.

7.    Plaintiff was hired as a Youth Supervisor (YS), the position was later  titled Juvenile Detention Officer (JDO).

8.    Defendants have taken retaliatory actions against Plaintiff because Plaintiff has filed EEOC complaints against Defendants, filed internal complaints and testified for a co-worker who was being unfairly terminated as retaliation for having also filed an EEOC complaint, reported sexual harassment, etc.

9.      Plaintiff injured her knee in July of 2008 and turned doctors' notes/requests on or about August 12, 2008 and August 20, 2008, with Plaintiff's limitations listed. Defendants' failure to provide reasonable accommodations exacerbated Plaintiff's injury. Lemond, Williams and Hilberg were informed by Plaintiff. Hilberg and Williams were responsible for making unit and task assignments/changes to the schedule, and scheduling was at the direction of Arriaga. This was done in violation of the American's with Disabilities Act and also as retaliation against Plaintiff under Title VII, as accommodations were made for others.

10.     Plaintiff provided an FMLA form from her doctor showing Plaintiff would need intermittent time off due to severe migraine headaches. After being transferred to the day shift, April of 2008, Plaintiff informed Lemond regarding the migraine headaches.

11.     Plaintiff was regularly harmed by one of her partners who set up highly fragranced hygiene products next to Plaintiff after being advised of Plaintiff's sensitivity to fragrance and having observed Plaintiff's reactions to same and insisted on having music playing on the unit constantly having been advised that Plaintiff could suffer from migraine headaches (even turning music on after Plaintiff had turned it off and then going into office or leaving the unit) These situations were discussed repeatedly with Lemond beginning about May 2008 and allowed to continue in violation of the American's with Disabilities Act and also as retaliation against Plaintiff under Title VII.

12.     On or about December 10, 2008, Plaintiff began being scheduled to unit 2B, which practiced 'Red Shirt Sundays' where all types of fragranced hygiene products, including perfumes, were made available for select detainees to use liberally and on clothing that is only laundered weekly. Sunday, December 14, 2008, Plaintiff talked to Lemond prior to leaving

3

work, advising Lemond about the fragrances on 2B.  Scheduling was at the direction of Arriaga. It is believed this was done to retaliate against Plaintiff and to do her physical harm.

13.     On or about December 31, 2008, Plaintiff told Lemond that she wanted to return to the 10-6 shift.  Lemond stated that she would add Plaintiff to the movement list.  Plaintiff hadn't asked to be put on the movement list, but to return to the 10-6 shift.

14.     On or about January 4, 2009, Plaintiff told Williams about the fragrances

15.     On or about January 6, 2009, Plaintiff attempted to talk to her new partner, Stacy Gustufson about the abundance of fragrance Gustufson wore.  Plaintiff had previously been assigned to the unit across the hall and had talked to Gustufson twice before regarding her fragrances  Gustufson became very loud, said she didn't care who it hurt, and demanded to know if Plaintiff had a doctor's note.  Plaintiff stated that she could get one.  Gustufson ran off the unit.

16.     On or about January 6, 2009, Shrum talked to Plaintiff regarding the incident earlier in the day with Gustufson and Plaintiff told Shrum that she had a medical condition causing her to be sensitive to some things including many fragrances.  Plaintiff again asked to return to the 10-6 shift.

17.     On or about January 7, 2009, Shrum informed Plaintiff that Gustiufson had refused to work with her and that Plaintiff would be transferred to Unit 3D; Units 3C and 3D share an office.  It is believed this was done to cause Plaintiff physical harm, as retaliation against Plaintiff and in Violation of the Americans with Disabilities Act.

18.     On or about January 15, 2009, Plaintiff was told by Shrum that her requests to return to the graveyard shift were denied.  Shrum informed Plaintiff she would have to wait on the movement list.  This was done to cause Plaintiff physical harm, to retaliate against Plaintiff, in violation of the American's with Disabilities Act, and Title VII, because Plaintiff was treated

4

differently than others had been.  Plaintiff had also been told that the 6-2 shift she was working

was over staffed so there was no business reason Plaintiff could not have been moved

immediately.

19.     On or about January 15, 2009, Plaintiff talked to Shrum about bringing in a

doctor's note to get some type of accommodation(s) because Plaintiff was experiencing violent

coughing almost every morning at work, as well as becoming increasingly ill in general.  Shrum

told Plaintiff that if she brought in a doctor's note Plaintiff would be sent to a data center for six

(6) weeks.  At that time Plaintiff also expressed concern for the many detainees that had asthma

and other repertory diseases.  Plaintiff was hospitalized in February and Plaintiff's conversation

with Shrum was relayed to Bridget by Plaintiff on March 9, 2009, that meeting being recorded

by him.

20.     On or about March 9, 2009 Plaintiff met with Bridget and Plaintiff suggested

accommodations that could be made such as asking people not to wear a lot of fragrance, moving

the time clocks (which shared an outlet) and schedule away from each other (all were in the same

narrow unventilated interior hall), putting in a clean air machine, asking people not to bunch up,

and moving plaintiff back to the graveyard shift where less than half the (approx. 35-50) people

would come in at the same time, etc.  Nothing was done so as to cause Plaintiff physical harm,

retaliate against her, and in violation of the Americans with Disabilities Act.

21.     During the March 9, 2009 meeting with Bridget, Plaintiff asked why her previous

complaints and the complaints of others, such as Julie Williams and Phyllis Sampson, hadn't

been investigated and Bridget said they had; they were all unfounded.  Sampson's allegations of

sexual harassment resulted in a man being dismissed from employment, though he was reinstated

due to management's failings, not because he hadn't harassed, etc. Sampson. (Seems the Human Resources Department has the unique ability to investigate a sewer and find only roses.)

22.    On or about March 17, 2009, Plaintiff told Williams that she had learned the detainees were wrapping their sheets around their heads to mock the Muslim staff member on the 2-10 shift; the detainees could see him cover his head when he prayed. Plaintiff also pointed out that, per policy, detainees were not allowed to cover their heads.

23.    On or about March 17, 2009, Plaintiff spoke to Michalak and told him detainees were wrapping their sheets around their heads to mock the Muslim staff member on the 2-10 shift. Michalak said he would talk to the Muslim staff member because that staff member should not be treating the detainees badly. Plaintiff responded that she hadn't said anything about the Muslim staff member treating the detainees badly and didn't understand why Michalak wanted to victimize the victim of religious harassment rather than address the problem.

24.    Incident Reports were written which document detainees covering/wrapping their heads on Unit 3D. Plaintiff also overheard, as she was leaving the unit at the end of her shift, a detainee ask the Muslim staff member on the 2-10 shift if he was a terrorist. A detainee that had a 'no pork' diet, and that had talked to Plaintiff about how he and his family celebrated Ramadan (a holy time for Muslims), began telling Plaintiff "It's O.K.", indicating he did not want a special (no pork) diet; the religious harassment on Unit 3D was so sever as to cause the detainee to not want to be identified as Muslim.

25.    Plaintiff heard sexual and sexist comments while in the Detention Center, including a comment by a staff member as she passed Central Post regarding the body parts of another staff member. Incident reports were written on Unit 3D documenting sexual comments, gestures, etc., and the harassment of female staff members and a female detainee.

26.     On or about April 6, 2009, plaintiff signed an affidavit attesting to her personal experiences in the Durango Detention Center; harassment, retaliation, etc.  Plaintiff was subpoenaed to appear at the April 17, 2009 hearing regarding Julie Williams.

27.     On or about April 23, 2009, Charlotte Shrum refused to allow Plaintiff to attend the continuation of the hearing regarding Julie Williams, requiring Plaintiff to contact Gary Bridget and the necessitating attached e-mail (See Exhibit B).

28.     On or about April 10, 2009 plaintiff was informed that she was being transferred to the Southeast Facility (SEF).  The previous transfers to SEF in February included only four (4) female JDOs (See Exhibit C, bottom of the page).  The subjects of the April transfers were female and/or over 40 years of age.  Plaintiff filed an employee formal complaint on 4/15/2009 (See Exhibit D).

29.     Shrum's response to Plaintiff's internal complaint stated that the criteria was based on factors that could not have been true, such as seniority, etc. considering who had been identified for transfer and/or transferred.  Arriaga's response, going up the chain of command, also did not address the problems as Plaintiff pointed out in her rebuttals (See Exhibit E), and also resulted in the Juvenile Probation Department attempting to correct a problem Plaintiff pointed out in her rebuttals (See Exhibit F).

30.     On or about April 17, 2009, Plaintiff was informed that, upon her transfer to SEF, Plaintiff would have to work the 2-10 shift, the shift she specifically stated she did not want to work and believed she should not be asked to work based upon her "seniority, performance, and any other appropriate business criteria". (See Exhibit G).  Plaintiff's transfer to SEF was repeatedly delayed, Plaintiff was injured at work on May 2, 2009, and dismissed from employment on June 4, 2009, without ever having been directed to report for duty at SEF.

7

31.     On or about April 15, 2009, Plaintiff attended a Hazardous Communications class in the detention center, conducted by Kristen Ortiz. During the class Plaintiff learned that the cleaning chemicals, such as Virex, used in the Detention Center were not being used correctly (according to the directions on the chemical). Plaintiff brought this to the attention of the Ortiz, who commented that the way the chemicals were being used would cause them to go into the face of the user. Plaintiff used the chemicals almost daily. Following the class a memo was sent out directing the use of safety goggles or glasses when using any chemicals (See Exhibit H).

32.     On or about May 2, 2009, Plaintiff injured her neck at work.

33.     On or about May 7, 2009, Plaintiff sent an e-mail to Boone (copying Mikisha Steel in Human Resources) asking for an extension of FMLA (See Exhibit I).

34.     On or about May 26, 2009, Plaintiff sent a letter to Steel requesting an extension of FMLA.  (See Exhibit J).

35.     On or about May 27, 2009, Plaintiff spoke with Steel by phone and complained that she was being hurt and endangered at work; Plaintiff asked for Steel's help.  Steel suggested Plaintiff take a year off.  Plaintiff found the suggestion ridiculous and asked Steel why she should be forced to take off from work instead of being provided a safe working environment.

36.     On or about June 8, 2009, Plaintiff received a letter from Boone (dated June 5, 2009) stating Boone was in receipt of Plaintiff's letter requesting a medical leave of absence until May 1, 2010, and separating Plaintiff from employment (See Exhibit K).  Plaintiff never requested a medical leave of absence!  See Exhibits I & J, there were no other 'letters'.

37.     On or about June 9, 2009, Martin Bihn (attorney for Plaintiff in that matter) requested a review of the circumstances of Plaintiff's dismissal (See Exhibit L).

38.     On or about July 20, 2009, Bihn forwarded an e-mail documenting some of the mistreatment of Plaintiff, including her denial of an ARRA premium reduction on her COBRA insurance, and requesting an earlier hearing to Hanley (See Exhibit M).

39.     On or about October 21, 2009, Plaintiff signed a settlement agreement and was reinstated, to be medically released on November 4, 2009 (See Exhibit N). During the meeting at which the settlement was signed Plaintiff was told an audit would be conducted and all of her access and rights, including her flexible spending account, would be restored as though she had never been dismissed in June.

40.     On or about October 27, 2009, Plaintiff and Bridget met with Victor Marino to discuss Plaintiff's benefits. At that time Plaintiff told Marino and Bridget that she believed she should not be charged for life insurances from June 4, 2009 through October 20, 2009 as she had not been covered during that time and had she, in fact, died she would not have been reinstated, and no insurance benefits paid her survivors. Plaintiff was assured by both Marino and Bridget that she would have restoral and access to her e-mail account, People Soft, and her flexible spending account; and COBRA, disability, and benefit issues would be resolved. Bridget excused himself from the meeting before the conclusion stating he had another meeting to attend.

41.     Beginning on or about October 26, 2009 Plaintiff telephoned, e-mailed, wrote and mailed, and personally visited Marino and Bridget to have access and benefit issues resolved without resolution (See Exhibit O). Plaintiff even visited Bridget's office on February 23, 2009, she was told he was in a meeting and a message was taken for him, to date he hasn't return that message either.

42.     The acts committed by Defendants and employees belonging to Defendants resulted in their violation of Title VII of the Civil Rights Act of 1964, as amended.

43.     The acts committed by Defendants and employees belonging to Defendants resulted in their violation of the Age Discrimination in Employment Act of 1967, as amended.

44.     The acts committed by Defendants and employees belonging to Defendants resulted in their violation of the Americans with Disabilities Act.

45.     Plaintiff has suffered from Defendants' purposeful discrimination.  Plaintiff has been treated unfairly and inconsistently in comparison to other employees.

46.     As a direct and proximate result of Defendants' purposeful discrimination, Plaintiff has suffered from physical injury, harm and/or pain, emotional distress, mental anguish, loss of work, loss of pay, etc.

47.     As a direct and proximate result of Defendants' purposeful discrimination, Plaintiff has suffered undue stress and anxiety from the unlawful conduct of Defendants and employees belonging to Defendants, which has manifested in the forms of loss of sleep, pain, physical illness and physical injury.

48.     The actions of Defendant were willful, wanton, done with an evil mind and hand, so as to be deserving of the assessment of exemplary and punitive damages.

49.     Plaintiff demands a trial by jury.

**WHEREFORE**, plaintiff prays for judgment against defendants as follows:

A.      For compensatory damages, plus special and incidental damages in such a sum as may be proven at trial;

B.      For punitive damages in such a sum as may be necessary to punish defendants for their wrongful acts in such a sum as may be proven at trial;

C.      For costs for the suit;

D.      For her attorney's fees, costs, and disbursements; and

E.      For such other and further relief as may be just and proper

**RESPECTFULLY  SUBMITTED** this 27 day of _____ april _____, 2010.

_____
FRANCES GILBERT
319 E. Fillmore St.
Tempe, AZ  85281-1162
Plaintiff Pro Se



EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 540-2009-04032 |

| Arizona Attorney General's Office, Civil Rights Division | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Frances A. Gilbert** | **(480) 452-5325** | **02-25-1957** |

| Street Address | City, State and ZIP Code |
|---|---|
| **319 E. Fillmore St., Tempe, AZ 85281** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **MARICOPA, COUNTY OF (JUVENILE PROBATION DEPT.)** | **500 or More** | **(602) 506-8568** |

| Street Address | City, State and ZIP Code |
|---|---|
| **3131 W. Durango** | **Phoenix, AZ  85009** |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest          Latest |

☐ RACE  ☐ COLOR  ☒ SEX  ☒ RELIGION  ☐ NATIONAL ORIGIN

☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ OTHER *(Specify below.)*

**06-04-2009**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

On June 4, 2009, I was terminated from my position of Detention Officer in retaliation for having filed previous charges of discrimination. I was terminated while out on disability leave.   On or about May 5, 2009, I requested an extension on my FLMA leave which was never addressed.  I was terminated via letter dated June 4, 2009, and received by me on or about June 9, 2009.  I was being terminated for not being able to perform my job functions, and my request for my medical leave of absence had been denied. I did not request a medical leave of absence.  I was only requesting an extension of my FMLA leave.  During my last year of employment, I was continually denied reasonable accommodations because of my disability.  Also, during my employment with Respondent I complained about religious discrimination against my co-worker, and discrimination against older and female employees when it came to transfers, creating a hostile work environment for me to work in.   I was also targeted for a transfer prior to my medical leave of absence starting in May of 2009.

I believe I have been discriminated against because of my disabilities, and retaliated against in violation of the Americans with Disabilities Act of 1990, as amended, and discriminated against because of my age (52) in violation of the Age Discrimination in Employment Act of 1967, as amended, and because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

I'm aware of non-disabled employees who have had their FMLA leaves extended for various reasons, and this was not afforded to me.   During my employment with Respondent, I had good work performance.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Aug 21, 2009**      *[signature]*<br>Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA <br> ☒ EEOC | 540-2010-00598 |

| Arizona Attorney General's Office, Civil Rights Division | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Frances A. Gilbert | (480) 452-5325 | 02-25-1957 |

Street Address                          City, State and ZIP Code

**319 E. Fillmore St., Tempe, AZ 85281**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| MARICOPA COUNTY OF (JUVENILE PROBATION) | 500 or More | (602) 506-4280 |

Street Address                          City, State and ZIP Code

**3131 W. Durango,  Durango Detention Center,  Phoenix, AZ 85009**

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address                          City, State and ZIP Code

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN <br> ☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION <br> ☐ OTHER (Specify) | Earliest            Latest <br> **11-05-2009** <br><br> ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

On or about August 21, 2009, I filed a previous EEOC Charge against Respondent.

On or about October 21, 2009, I participated in an arbitration meeting with Gary Bridget, Employee Relations Administration, Martin Bihn, Attorney Represented by Union, and myself.  We agreed I would have my job back and it would look as if I was never terminated, they agreed that I could have access to my Flexible Spending Account, they agreed I could access my work email from home (as other employee do), they agreed they would conduct an audit on my previous short term disability checks since they were not cashed because it was not the correct amount, and they agreed to fix my Cobra Insurance situation.  However, the only thing they followed through with was fixing the Cobra situation.  I believe they did not follow through on the addition request because I filed a Federal lawsuit and an EEOC Charge.

I was not able to return to work after my arbitration meeting because of injuries resulting from my disability. On November 5, 2009, I was terminated because I could not return to work as of this date.

I believe I have been retaliated against for having filed a previous EEOC charge, 540-2009-04032, in violation of Title VII of the Civil Rights Act of 1964, as amended, in violation of the Age Discrimination in Employment Act of 1967, as amended, and in violation of the Americans with Disabilities Act of 1990.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. <br> SIGNATURE OF COMPLAINANT |
| **Dec 03, 2009** _(signature)_ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE <br> (month, day, year) |

B

[Print] [Close]

From:   "Frances Gilbert - JUVX" <fragil@Juvenile.maricopa.gov>
To:   <fabgilbert@att.net>
Subject:   FW: Fax received (1p) from:" on ID:3728603
Date:   Friday, June 5, 2009 8:42:39 AM

**From:** Gary Bridget - SUPCRTX
**Sent:** Thu 4/23/2009 2:54 PM
**To:** Charlotte Shrum - JUVX
**Cc:** Debra Hall - JUVX; Cindy Reilly - JUVX; Frances Gilbert - JUVX
**Subject:** FW: Fax received (1p) from:" on ID:3728603

Charlotte,

In case you need it for your files, here is proof that Frances was subpoenaed for the hearing which began last Friday and will be continued on April 24th in the East Court Building, third floor, Tang Room, at 8:00 AM. Her presence is required and leave is not necessary.

*Gary M. Bridget, SPHR*
*Employee Relations Administrator*
*Judicial Branch Human Resources*
*(602) 506-8568 (office)*
*(602) 372-8603 (fax)*

**From:** Faxination
**Sent:** Wednesday, April 15, 2009 1:00 PM
**To:** Gary Bridget - SUPCRTX
**Subject:** Fax received (1p) from:" on ID:3728603

# Incoming fax

X Fenestrae

---

Description
Fax received (1p) from:" on ID:3728603

Explanation:   Sent to:'3728603' (0)

Items received:   1
Duration:   17 seconds
Transmission speed: 26400 baud
Job reference:   0000F020
Gateway ID:   0

**Attachment 1:** 0000F020000.PDF (application/octet-stream)



[Print] [Close]

From: "Frances Gilbert - JUVX" <fragil@Juvenile.maricopa.gov>
To: <fabgilbert@att.net>
Subject: FW: Three Info Items/4to SEF
Date: Tuesday, June 2, 2009 2:32:50 PM

**From:** Grace Arriaga - JUVX
**Sent:** Sun 3/1/2009 11:11 AM
**To:** DUR - Detention All
**Subject:** Three Info Items

Congratulations to JDO Lauren Brown who has been selected for the Durango JDO Program Coordinator assignment.

Lauren was here at Durango Detention prior to moving to the Project HOPE program. Lauren will move into her JDO Program Coordinator duties on March 9, 2009.   Please do whatever you can to make her feel welcome.  Lauren is working on her Masters of Social Work.  Her graduate work involves Evidence Based Practices and developing/implementing interventions with children based on EBP concepts.  Since that is the direction for the department, Lauren's knowledge of EBP will be invaluable as we move the detention units into EBP transitional programming.

Congratulations to JDO Candace Seegers who was selected to be the third GED Examiner for Durango Detention.   Candace has completed her GED Examiner training and once she completes the required GED testing observations, we will have a cadre of three GED Examiners and one Chief Examiner to meet GED testing needs.



The four Durango JDOs who will be temporarily assigned to SEF are Rosario Flores, Lolita Fowler, Arhonda Robinson, and Rosa Vega.  I have shared with Cindy Reilly that she is getting four dependable staff who will be missed here.  As I've stated before, we will be reviewing the staffing and population counts at both facilities and that will determine when the Durango staff will be able to return.  Both facilities need to be safe environment and that requires sufficient staff to provide active sight and sound supervision of youth in the facility.   We will continue to share staff resources between facilities as necessary.

D

[Print] [Close]

From:    "Frances Gilbert - JUVX" <fragil@Juvenile.maricopa.gov>
To:      "Charlotte Shrum - JUVX" <CHASHR@juvenile.maricopa.gov>
Cc:      "Grace Arriaga - JUVX" <graarr@Juvenile.maricopa.gov>,"Debra Hall - JUVX"
         <debhal@mail.maricopa.gov>,"Gary Bridget - SUPCRTX" <gbridget@courthr.maricopa.gov>
Subject:  Durango to SEF Transfer
Date:    Thursday, April 16, 2009 12:13:55 AM


Charlotte,

Thank you for notifying me that my transfer to SEF will be delayed until April 27th.  As I expressed to you
earlier, I do not believe the criteria regarding the transfers is appropriate.  I have decided to pursue that
matter.  I am attaching the Word document for an Employee Formal Complaint Form and have printed
copies as well.  I have copied this message to Debra Hall, the person you directed me to contact during our
April 10th meeting.  The "complaint" is not an attempt to be excused from my duties.  I have not and am not
inviting anyone into my personal business.  The complaint is as defined, "a tool of communication initiated
by a regular employee concerning the interpretation or application of policies, procedures and practices".
Having read Grace's message of Wednesday, April 15, 2009, "Movement to SEF" and interpreting that
furthur decisions may be made in such an unprofessional way necessitates this action on my part.

My understanding was that you had already messaged James Kaminsky with my shift requests, etc.  I have
not received any communications from him as yet and so it is particularly nice to have the additional time.

Thank you for your assistance,
Frances

**Attachment 1:** SEFtrans.complt.04.15.2009.doc (application/msword)

**SUPERIOR COURT OF MARICOPA COUNTY**

| | |
|---|---|
| Section:  P-304-K       Pg. <u>1</u> of <u>6</u>       Attachments_____ | Original Date:  <u>09/11/96</u> |
| Subject:  Judicial Human Resources Complaint Procedure Policy | New_____  Addl _____ |
| Policy   <u>X</u>          Procedure   <u>X</u>        Information_____ | Revision <u>No</u>.3  Date: <u>10/01/00</u> |
| Policy Authority:  Judicial Merit Rule 2.10 | Related Sections:_____ |

## JUDICIAL BRANCH HUMAN RESOURCES
## COMPLAINT PROCEDURE

I.     <u>PURPOSE</u>

The purpose of the complaint procedure is to provide a uniform, systematic, just and equitable method for the resolution of complaints as quickly as possible at the point nearest their origin.  The procedure assures an employee that any complaint will be heard and that appropriate corrective action will be taken without reprisal, coercion or discrimination against the employee submitting, assisting in or interested in the complaint.   In addition to the complaint procedure, the Superior Court offers a mediation program for employees of court departments.

II.    <u>DEFINITION</u>

A "complaint" is a tool of communication initiated by a regular employee concerning the interpretation or application of policies, procedures and practices.

III.   <u>SCOPE</u>

A regular status employee may file a complaint concerning the interpretation or application of policies, procedures, and practices.   A regular status, on-call or temporary status employee may file a complaint based on alleged discrimination including race, sex, religion, national origin, color, age, disability and sexual harassment using the Discrimination, Sexual Harassment or ADA Grievance Procedure for Court Employees.

Issues for which an employee may not file a complaint include:

1.      Demotion, suspension or dismissal, or other disciplinary matters, unless an employee believes the disciplinary action was imposed as a result of unlawful discrimination.

2.      Actions for which another appeal or review procedure exists such as performance evaluation.

3.      Matters involving compensation.

Employees may obtain complaint forms from Court Department Human Resources staff and may consult with them regarding complaints, policy and procedure.

IV.    PROCEDURE

A court department may adjust the number of steps in the complaint procedure to reflect the levels of supervision within the department.

A court department is not required to consider an employee complaint that was not filed in accordance with this procedure. The complaint steps are as follows:

1.    An employee having a complaint should discuss the matter with his/her immediate supervisor in an attempt to resolve the issue before submitting a formal written complaint.  [If an employee files a formal complaint against another employee, the steps of this complaint procedure shall also apply]. The discussion must take place within ten working days of the incident or be resolved within ten working days of the discussion.  If the complaint is not resolved, the employee may file a formal written complaint within ten days using the attached Employee Formal Complaint Form, with copies sent to the immediate supervisor, the department's human resources office, and Court Human Resources.  The supervisor will respond to the complaint within ten working days using the Supervisor Complaint Response Form.  At his/her discretion, the Court Human Resources Directory may review the findings of a complaint to monitor the program effectiveness.  Such review may not alter or interfere with departmental decisions.

2.    If the employee is not satisfied with the supervisor's response, the employee shall contact the department' human resources office within three working days to arrange for the parties to attend mediation.  The department's human resources office shall contact the Alternative Dispute Resolution (ADR) Office within two working days after the matter is referred for assignment of a mediator.  The ADR Office shall assign a mediator within five to seven working days.

3.    If no agreement arises from the mediation session, the employee may request a higher review by submitting the Employee Formal Complaint Form and a copy of the Supervisor Complaint Response Form to the next level supervisor within five working days of the mediation session.

4.    The second level supervisor will respond to the complaint in writing using the Next Level Supervisor Response Form within ten working days.   If the complaint is not resolved to the employee's satisfaction, the employee may submit a copy of the formal written complaint and all responses to the Appointing Authority or his/her designee The Appointing Authority or designee shall respond to the complaint in writing using the Appointing Authority Response form within 30 working days.  The determination by the Appointing Authority shall be final in all cases.

## EMPLOYEE FORMAL COMPLAINT FORM

| | Date of Filing: |
|---|---|
| **Addressed to:** *(Indicate which one)*<br><br>☐ Immediate Supervisor:<br><br>☒ Supervisor's Supervisor:  Charlotte Shrum<br><br>☐ Appointing Authority: | |

| **Employee Name:** Frances Gilbert | **Classification:** regular status |
|---|---|

| **Department:** Durango Juvenile Detention | **Division/Low Org:** |
|---|---|

**Date of the event or action** (or knowledge of the event or action) **being grieved**:   April, 10, 2009

**Date of verbal discussion with supervisor:** April 10, 2009

**Event or action being grieved:** Transfer to a different facility.

**Statement of Facts:** Friday morning, April 10, 2009, Charlotte Shrum spoke with me in the Units 3C/D office and informed me I had been chosen to transfer to the South East Juvenile Detention Facility (SEF) and that the criteria used to make that decision, in part, was based upon where I lived (my personal information).  I asked for the complete criteria, but was not told.  I asked if there would be a message comming out that would list the criteria or those that would be moved and told there probably would not, but that after I got to SEF I could see who had been moved and would understand.  I was told that I could contact Deborah Hall if I had a problem with the transfer.  I believe I made it clear that I believed the criteria upon which the decision to transfer me, and everyone else, was not appropriate.

**Requested Remedy:** Formulate a criteria for transfers, reallocation of staff to shifts, etc. that complies with Standard Business Practices.  Personal information is not to be used as the basis of business decisions.  Business criteria is used for business decisions.  If an employee is negatively impacted by a business decision then the employee may choose to ask that the decision be reviewed in light of their personal situation and provide personal information to the employer for consideration.  I did not authorize the access of my personal information.  Where one lives, their marital status, race, etc. is part of the personal information that an organization may collect and maintain regarding its employees.  It is not information that is to be used to make decisions such as promotions, furloughs, or transfers.  Suggest also that whomever was involved in constructing this criteria 1. receive training in basic business practices, 2. be coached regarding the misuse of personal/confidential information, and 3. receive training in business ethics.  Request all the transfers, including mine, be reviewed based upon appropriate business criteria.  Request the equal application of any developed criteria and proper documentation requirements and suggested guidelines for consideration for those seeking appeal.  Suggest the Department seek the services of an outside consultant skilled in Bussiness Management.

**Employee's Signature:**_____

**Date:**_____

c:  Court Human Resources Department

## SUPERVISOR COMPLAINT RESPONSE FORM

|  |
|---|
| **Date of Response:** |
| **Name of Respondent:** |
| **Classification/Position:** |
| **Findings:**  I have reviewed the facts of your complaint and have determined that: |
| **Action:**  Based on my findings of facts, I intend to take the following action: |
| **Review:**    If you are not satisfied with my proposed action, you must notify the Human Resources Office in your department within three working days to schedule mediation.  If an agreement was not reached after mediation, you may request a review of this response by the next level supervisor.  Any request for review must be submitted within 10 working days. A copy of all previous responses must accompany your request for review. |

**Respondent's Signature:**_____

**Date:**_____

c: Court Human Resources Department

## NEXT LEVEL SUPERVISOR COMPLAINT RESPONSE FORM

| |
|---|
| **Date of Response:** |
| **Name of Respondent**: |
| **Classification/Position:** |
| **Findings:**  I have reviewed the facts of your complaint and have determined that: |
| **Action**:  Based on my findings of facts, I intend to take the following action: |
| **Review**:  If you are not satisfied with my response, you may request a review by the appointing authority within 10 working days.  A copy of all previous responses must accompany your request for review. |

**Employee's Signature:**_____

**Date:**_____

c: Court Human Resources Department

## APPOINTING AUTHORITY COMPLAINT RESPONSE FORM

| |
|---|
| **Date of Response:**<br>**Name of Appointing Authority or Designee:** |
| **Court Department:** |
| **Findings:** I have reviewed the facts of your complaint and have determined that: |
| **Action:**  Based on my findings of facts, I intend to take the following action: |
| *The determination of the Appointing Authority or Designee is final in all cases* |

**Employee's Signature:**_____

**Date:**_____

c: Court Human Resources Department



[Print] [Close]

From:   "Frances Gilbert - JUVX" <fragil@Juvenile.maricopa.gov>
To:   "Charlotte Shrum - JUVX" <CHASHR@juvenile.maricopa.gov>
Cc:   "Grace Arriaga - JUVX" <graarr@Juvenile.maricopa.gov>,"Debra Hall - JUVX"
<debhal@mail.maricopa.gov>,"Gary Bridget - SUPCRTX" <gbridget@courthr.maricopa.gov>
Subject:   RE: Emailing: Gilbert
Date:   Tuesday, May 12, 2009 5:51:30 PM

Regarding the SUPERVISOR COMPLAINT RESPONSE FORM completed by Charlotte Shrum
and dated 04-28-09, and given to me in person and sent via e-mail on April 30, 2009:

I am not satisfied with the response and am requesting a review of the response by the next level
supervisor. I am including in this e-mail my original complaint (SEFtrans.complt.04.15.2009), the
response completed by Charlotte Shrum (Gilbert_resp2cmpt_Charlotte_Shrum.04.30.2009), and
my concerns regarding the response (Resp2_resp2cmpt_Charlotte_Shrum.05.12.2009). At a
minimum one would expect that once the abuse of the transfers and the transfer criteria was
pointed out there would have been some attempt to remedy an obvious problem, instead none of
the Requested Remedies have even been given considered or reasonably addressed.

Below is a paragraph of the copied text from the e-mail which accompanied my original
complaint, it may be useful when reading my concerns regarding Ms. Shrum's response to that
complaint.

Thank you for notifying me that my transfer to SEF will be delayed until April 27th. As I expressed to you
earlier, I do not believe the criteria regarding the transfers is appropriate. I have decided to pursue that
matter. I am attaching the Word document for an Employee Formal Complaint Form and have printed
copies as well. I have copied this message to Debra Hall, the person you directed me to contact during our
April 10th meeting. The "complaint" is not an attempt to be excused from my duties. I have not and am not
inviting anyone into my personal business. The complaint is as defined, "a tool of communication initiated
by a regular employee concerning the interpretation or application of policies, procedures and practices".
Having read Grace's message of Wednesday, April 15, 2009, "Movement to SEF" and interpreting that
further decisions may be made in such an unprofessional way necessitates this action on my part.

I am sending this via e-mail and will send hard copies through the U.S. Mail to Grace Arriaga. I
have already spoken with Gary Bridget, at the Human Resources Office in my department, by
phone. I believe that even without sending the hard copies I will have complied with all the
requirements and time lines associated with advancing this complaint at the moment this message
is sent. I may be contacted by phone at 480-452-5325.

Frances Gilbert


**From:** Charlotte Shrum - JUVX
**Sent:** Thu 4/30/2009 9:25 AM
**To:** Frances Gilbert - JUVX
**Subject:** Emailing: Gilbert

<<Gilbert.dot>>
Here is a copy of the Supervisor written response. I will provide you with a written signed

copy today.

**Attachment 1:** Resp2_resp2cmpt_Charlotte_Shrum.05.12.2009.doc (application/msword)
**Attachment 2:** Gilbert_resp2cmpt_Charlotte_Shrum.04.30.2009.doc (application/msword)
**Attachment 3:** SEFtrans.complt.04.15.2009.doc (application/msword)

Attachment 1: Resp2_resp2cmpt Charlotte Shrum.05.12.2009

Regarding the SUPERVISOR COMPLAINT RESPONSE FORM completed by Charlotte Shrum and dated 04-28-09, and not given to complainant in person or sent via e-mail until April 30, 2009:

I am not satisfied with the response and am requesting a review of the response by the next level supervisor. I have detailed my concerns below and offer also a short list of unaddressed or inadequately covered points in the response I have to date.

- The three (3) point criteria in the response is not the unstated criteria used to identify and transfer people from the Durango Detention Center to the Southeast Facility (SEF).

- There is no provision for an audit of the criteria or a review of those identified for and/or already transferred to SEF. Such an audit would prove the criteria in the response was not used.

- There is no acknowledgement that management has violated company policy, standard business practices and behaved in an unethical manor and no statement to change.

- As discussed in the e-mail which accompanied the electronic submission of this complaint, and I believe constituted a part of the actual criteria, employees are treated differently within the Durango Detention Center. There is no equal application of consequences.

- There is no transfer policy or procedure. The only valid and stated criteria for movement, locations or shifts, is seniority.

The response list the criteria used as being 1) distance from an employee to address of record to the SEF facility; 2) seniority based on original hire date; and 3) consideration of agency operational needs to insure the skills at each facility are balanced. **This was not the criteria** used to make the decisions about whom to transfer as evidenced by the identification and ultimate transfer of persons that met the unstated criteria verses the criteria stated in the response. Further, at the time I was told I had met the criteria I was also told that the criteria would not be distributed nor would the names of those persons who met the criteria. It is my belief that the actual transfer criteria included components of favoritism, managerial whim and/or self-interest, discrimination, intimidation and retaliation; as it's an established pattern at the Durango Detention Center. **If** the criterion used was as stated in the response **then** a review of the persons actually identified by the unstated criteria and ultimately transferred to the Southeast Facility (SEF) would be the same. My original complaint asks for such a review and the response makes

no effort to address either the legitimate concerns of what the actual criteria was or the transfer of persons based on an inappropriate criteria. What is supplied by the response is a nice cover up and perhaps in so doing the managers involved got some training, as was also suggested in the original complaint. As at least one (1) of the persons actually transferred to SEF must now drive from Glendale to Mesa (more than 35 miles one way) it defies logic to believe for one moment that the criteria presented in the response or the further assertion that, "Effort is made not to create any undue hardship", are credible statements. (As a point of interest at least one person was notified that they were being transferred to SEF by having a message left on their home voicemail while they were out of the State on personal business. This person had scheduled the time away, was concerned that they may be identified for transfer per the actual and usual Durango decision criteria <favoritism, managerial whim and/or self-interest, discrimination, intimidation and retaliation> and had specifically stated when they were leaving and would return. This employee was given only days to report to a new assignment, and a memo by the employee asking for a review was rejected.)

The use of personal information, including home addresses, which is gathered for a stated purpose being used for any other purpose without prior consent violates basic standard business practices and people's privacy. It's immoral, unethical, and illegal. It opens up businesses to liability, corruption and inefficiency. We do not live in an Orwellian Society where 'Big Brother' watches our every move and the 'State' makes our decisions. The response suggests that the 'Judicial Department' and specifically the Durango Detention Center has a right to make decisions regarding what's fair, what constitutes a hardship, may misrepresent the use of information, make up rules and regulations as needed and hold others unequally accountable as pleases them without any written policy or procedure. The reason standard business practices, business ethics and laws exist is to regulate this type of behavior.

By using home addresses to determine work assignments in the past many Juvenile Detention Officers (JDOs) have changed their address information to avoid being asked to change their work assignment/location. Management is therefore responsible for having corrupted databases necessary to process appropriate business functions such as the mailing of statements, filing of tax forms, etc. Management has also contributed to the corruption of the emergency contact system putting everyone who works in a juvenile detention center and more specifically the detainees at risk should there be an emergency situation. There is a reason why information is collected for specific purposes and why that information is used only for those purposes. (Having come from the newspaper industry the expression, "first liar doesn't have a chance", comes to mind.) Since not having first stated that the collection of the addresses would be used to determine work assignments, or having first acquired permission to use the information for that purpose as may be the case, "Throughout the Judicial Branch departments, that require staff

to rotate assignments…", the corruption of data, divisiveness among employees and within the detention center, the heightened risk and decreased ability of the department to respond in an emergency are all due to management's stated misuse of personal information. (Right now a federal survey that asks where people live has been distributed. Would there be a consequence should it appear that a significant percentage of a department moved away from their work assignment? Didn't complete the survey? Funny thing about trust, once you tell people they can trust you to misuse information that's what you told them! Maybe they already had evidence that you weren't trustworthy to start with and they just wanted to do whatever they could to avoid the actual and usual Durango decision criteria <favoritism, managerial whim and/or self-interest, discrimination, intimidation and retaliation>?) The response states, "As a Condition of Employment, staff are required to provide their current address and phone number to their supervisor and the Human Resources Department." "These addresses are utilized to mail correspondence, such as W-2s, or other informative literature that needs to be mailed to staff or if emergency contact is necessary." Note that nowhere is it listed that the information will or may be used to determine work assignment or location.

Prior to being hired, I believe, everyone is informed that they may be asked to work at any location and on any shift, and is told about the Movement List. After working for one (1) year one may be placed on the Movement List and transferred to another shift or location. One is given to understand that the only criteria for movement to another location or shift would then be seniority. Unfortunately, in practice (as I have found first hand) the Movement List, when used at all, is administrated using the same unstated criteria (favoritism, managerial whim and/or self-interest, discrimination, intimidation and retaliation) that characterize other decisions at the Durango Detention Center. If there were to be some reasonable criteria for transfer one might suggest a previously stated criteria and use of the concept of equity (treating people equally). As quoted earlier from the response, "Throughout the Judicial Branch departments, that require staff to rotate assignments to various geographical locations, utilize home addresses to determine duty stations in an attempt to balance the needs of the agency as well as the needs of employees." Where is there a written transfer policy? If there is a requirement of staff to "rotate assignments to various geographical locations" where is the policy, or the procedure? What guidelines are followed? How does the rotation work? For how long do the rotational assignments last? Since it is a requirement, where is the equal application of a policy and procedure? How about the equal consequence for doing one's duties verses avoiding or declining to meet the requirements of one's job? Since everyone agreed to work all locations & shifts, and everyone has a personal life, why not bid the shifts and locations? Why not be equal?

"Consideration of agency operational needs to ensure that the skills at each facility are balanced" is listed as the third (3rd) criteria on the response. This is not an applicable criteria as regards

JDOs in a detention center. All JDO who have passed initial probation are qualified to function in that position; the probationary period for a JDO is one (1) year. Should there be probationary JDOs, or some other group that can be identified by stated, reasonable, and standard business practices, then an argument can be made that such persons be excluded from any rotation. It is a managerial function to train, coach, and otherwise develop the skills of employees; it is improper to allow this function to be abdicated to the actual and usual Durango decision criteria, favoritism, managerial whim and/or self-interest, discrimination, intimidation and retaliation. Therefore, the only legitimate criteria for transfer to a different location or shift would be seniority. Why not a rotational bid by seniority, as is used by many organizations? The advantages of doing this include uniformity of policy and procedure throughout the organization (no more, "this is how we do it here"), increased professionalism, and enhanced employee morale. Resources could effectively and timely be allocated to different locations and shifts as needed.

## SUPERVISOR COMPLAINT RESPONSE FORM

| | Date of Response: 04-28-09 |
|---|---|

**Name of Respondent:** Charlotte Shrum

**Classification/Position:** Detention Manager

**Findings:** I have reviewed the facts of your complaint and have determined that:
Based on the information provided in your complaint it was determined that all standard practices were utilized during the decision making process. The criteria that was utilized was (1) the distance from the employees' address of record to the SEF facility, (2) the seniority of the employee based upon their original hire date and (3) consideration of agency operational needs to ensure that the skills at each facility are balanced. As a Condition of Employment, staff are required to provide their current address and phone number to their supervisor and the Human Resources Department. By signing the Conditions of Employment staff agree to provide their personal address and phone number. Addresses are kept confidential and safeguarded. These addresses are utilized to mail correspondence, such as W-2s, or other informative literature that needs to be mailed to staff or if emergency contact is necessary. Throughout the Judicial Branch departments, that require staff to rotate assignments to various geographical locations, utilize home addresses to determine duty stations in an attempt to balance the needs of the agency as well as the needs of employees. Effort is made to not create any undue hardship.

**Action:** Based on my findings of facts, I intend to take the following action:
No action is necessary as all addresses were kept confidential and appropriate established practices were followed.

**Review:** If you are not satisfied with my proposed action, you must notify the Human Resources Office in your department within three working days to schedule mediation. If an agreement was not reached after mediation, you may request a review of this response by the next level supervisor. Any request for review must be submitted within 10 working days. A copy of all previous responses must accompany your request for review.

**Respondent's Signature:**_____

**Date:**_____

c: Court Human Resources Department

## EMPLOYEE FORMAL COMPLAINT FORM

| | Date of Filing: |
|---|---|
| **Addressed to:** *(Indicate which one)* | |

☐   Immediate Supervisor:

☒   Supervisor's Supervisor:   Charlotte Shrum

☐   Appointing Authority:

| **Employee Name:** Frances Gilbert | **Classification:** regular status |
|---|---|
| **Department:** Durango Juvenile Detention | **Division/Low Org:** |

**Date of the event or action** (or knowledge of the event or action) **being grieved:**   April, 10, 2009

**Date of verbal discussion with supervisor:** April 10, 2009

**Event or action being grieved:** Transfer to a different facility.

**Statement of Facts:** Friday morning, April 10, 2009, Charlotte Shrum spoke with me in the Units 3C/D office and informed me I had been chosen to transfer to the South East Juvenile Detention Facility (SEF) and that the criteria used to make that decision, in part, was based upon where I lived (my personal information). I asked for the complete criteria, but was not told. I asked if there would be a message comming out that would list the criteria or those that would be moved and told there probably would not, but that after I got to SEF I could see who had been moved and would understand. I was told that I could contact Deborah Hall if I had a problem with the transfer. I believe I made it clear that I believed the criteria upon which the decision to transfer me, and everyone else, was not appropriate.

**Requested Remedy:** Formulate a criteria for transfers, reallocation of staff to shifts, etc. that complies with Standard Business Practices. Personal information is not to be used as the basis of business decisions. Business criteria is used for business decisions. If an employee is negatively impacted by a business decision then the employee may choose to ask that the decision be reviewed in light of their personal situation and provide personal information to the employer for consideration. I did not authorize the access of my personal information. Where one lives, their marital status, race, etc. is part of the personal information that an organization may collect and maintain regarding its employees. It is not information that is to be used to make decisions such as promotions, furloughs, or transfers. Suggest also that whomever was involved in constructing this criteria 1. receive training in basic business practices, 2. be coached regarding the misuse of personal/confidential information, and 3. receive training in business ethics. Request all the transfers, including mine, be reviewed based upon appropriate business criteria. Request the equal application of any developed criteria and proper documentation requirements and suggested guidelines for consideration for those seeking appeal. Suggest the Department seek the services of an outside consultant skilled in Bussiness Management.

F

From: Frances Gilbert - JUVX

[Print] [Close]

From: "Frances Gilbert - JUVX" <fragil@Juvenile.maricopa.gov>
To: <fabgilbert@att.net>
Subject: FW: Employee Information
Date: Friday, June 5, 2009 8:32:49 AM


**From:** Alice Bustillo - JUVX
**Sent:** Wed 6/3/2009 9:39 AM
**To:** Juvenile Probation
**Subject:** Employee Information

Good morning,

Recently the Juvenile Probation Department identified a gap in the ability to contact staff quickly in urgent or time-sensitive circumstances. Primary reasons for the gap include outdated contact information and reduced department-level access to employee information contained in the personnel systems – especially after hours and/or on weekends.

As you can imagine, collection and maintenance of employee contact information for an agency with more than 800 positions can be a huge drain on staff time. Attempting to update existing spreadsheets and/or databases of information would be an inefficient use of time, especially when we are asking staff to take on additional duties to cover vacant positions. Electronic data submission by individuals will enable JPD to collect current information without a significant time/workload impact on any one staff member.

Please use the link below to access the new employee information collection form. **It is important for staff to complete the form while connected to the JPD computer network**, as there is a "Submit by Email" button that will enable us to capture the data automatically. You can also print a copy for your records, if you like. Staff members who share computers (as in Detention) can use the "reset" button to clear the fields for the next user.

I.B-.036 Employee Information Form or
http://courts.maricopa.gov/juvenile/policies/docs/FORM_I.B-036.pdf

All employees are required to complete this electronic submission no later than June 26, 2009 .

Thank you!

G

From:     "Frances Gilbert - JUVX" <fragil@Juvenile.maricopa.gov>
To:     "James Kaminsky - JUVX" <JAMKAM@Juvenile.maricopa.gov>
Cc:     "Charlotte Shrum - JUVX" <CHASHR@juvenile.maricopa.gov>,"Gary Bridget - SUPCRTX"
        <gbridget@courthr.maricopa.gov>,"Debra Hall - JUVX" <debhal@mail.maricopa.gov>
Subject:     RE: Durango to SEF
Date:     Thursday, April 23, 2009 8:05:57 AM

James,

You are very correct in that changing facilities and working a different shift is a significant disruption. I did not expect that I would be asked to make such a sacrifice. I may have been misled when I was told I had met the murky & undisclosed criteria for movement by being told that every effort would be made to accommodate those being moved to SEF in regard to shift and days off and that those already assigned to SEF were being moved to make those accommodations. I was also told that I would be returned to Durago at the earliest possible time and that this was a temporary assignment. This rotation and your e-mail do not reflect what I was told. I now understand why so many would refuse to go to SEF when told they too met the criteria and it is unfortunate that there is no consequence associated with that, probably not for everyone. Of course others were not even asked.

While I hope that the next rotation my shift and days off reflect my seniority, which in September will be five (5) years, I do have an immediate concern. I have an event that was scheduled based upon my attendance for 4pm on Saturday, May 2, 2009. I will need that day off. I'm sure you understand that having been assigned to the 6am-2pm shift it did not require me to fill out a leave slip and many weeks after the event having been scheduled and predicated on my attendance and including others it is not possible to reschedule. I should also include that, as many appointments require advance planning I am having to make a lot of accommodations for the changes that have been forced upon me as a part of my position. As all people have personal lives and all people want and expect equal treatment and to be dealt with honestly I am sure I will again be able to participate in the lives of my family and friends, travel less, and overall my situation will improve greatly at or before the next rotation.
Frances

**From:** James Kaminsky - JUVX
**Sent:** Fri 4/17/2009 1:05 PM
**To:** Frances Gilbert - JUVX
**Cc:** Matthew Michalak - JUVX; Charlotte Shrum - JUVX
**Subject:** RE: Durango to SEF

Frances,
I attempted to call you today at Durango, but was informed that you were not working today. I know you are interested in getting information about your movement from Durango to SEF Detention, and I wanted to make the information available to you as soon as possible. Our first priority in placing staff moving from Durango to SEF had to be adequately staffing our facility. Durango Detention and SEF Detention are parts of the same organization, with the same goal of meeting the needs of our clients. That being said, your new assignment at SEF is on the 2-10 shift, working on Unit 12 (younger boys) with Mondays and Tuesdays off. You will remain in this rotation until the next scheduled rotation in September, 2009. Your first shift at SEF will be on Wednesday 4/29/09. Your new Team Leader will be Allen Larkin, and your assigned Manager is Jim Kaminsky. I recognize that changing facilities, and working a different shift is a significant disruption, and I sincerely apologize for the inconvenience. Please feel free to call me should you have questions or need clarification. My office number is 602-506-0619 and my cell is 602-723-3117.

We look forward to working with you at SEF Detention in your new assignment.

Jim Kaminsky and the SEF Detention Management Team


**From:** Frances Gilbert - JUVX
**Sent:** Thursday, April 16, 2009 12:42 AM
**To:** James Kaminsky - JUVX
**Cc:** Charlotte Shrum - JUVX
**Subject:** Durango to SEF

Mr. Kaminsky,

I have been notified that I will be transferring from the Durango Juvenile Detention Center to the South East
Juvenile Detention Facility (SEF) effective April 27, 2009. I have been informed that you are my contact
person at SEF. While I do not have a preference regarding days off I would prefer to work on the over
night (10-6) shift, and were that not possible on the day (6-2) shift. I do not want to work on the afternoon
(2-10) shift and have a good faith belief that my seniority, performance, and any other appropriate business
criteria used to select shifts will not require that working the afternoon (2-10) shift be asked of me, but I've
been wrong before and do not know your plans or the SEF rotations.

Please let me know as soon as is possible what shift and schedule I will be assigned. If that shift &/or
schedule will be reassigned in the next three (3) months I would also appreciate knowing that as well. I am
a planner and what occupies such a large part of so many days a week is best laid down first.

Thanking you in advance for your time and consideration,
Frances



[Print] [Close]

From:   "Frances Gilbert - JUVX" <fragil@Juvenile.maricopa.gov>
To:   <fabgilbert@att.net>
Subject:   FW: Goggles and safety glasses
Date:   Friday, June 5, 2009 8:43:55 AM

High Priority

**From:** Charlsie Cordova - JUVX
**Sent:** Wed 4/22/2009 7:33 PM
**To:** DUR - Detention All
**Subject:** Goggles and safety glasses

Safety goggles and glasses are being delivered to all units for staff to use:

Safety goggles or safety glasses are to be worn when you are using any chemicals. They will be kept in the safety drawers in staff office until clips can be placed in the janitor's closet. They will need to be accounted for at shift change and logged in the logbook. If any chemicals get on the goggles or glasses please be sure to wash them with soap and water after use. Also we will have alcohol pads in the safety drawers and these can also be used for disinfecting them between uses. If the goggles or safety glasses become broken or unusable please contact your direct supervisor or Charlsie Cordova for replacement.

Thank you for all that you do to keep everyone safe!! ☺☺

Charlsie Cordova
Detention Manager-Safety and Security

## Cleaning for Safety Eyewear:

1. *Thoroughly clean all surfaces with a mild soap solution. Do not use any solvents on the lenses.*
2. *Carefully rinse all traces of soap solution.*
3. *Air dry or pat dry with a clean, soft cloth or tissue.*

**Mikisha Steel - SUPCRTX**

---

**From:**     Frances Gilbert - JUVX

**Sent:**     Thursday, May 07, 2009 8:55 PM

**To:**       Carol Boone - JUVX

**Cc:**       Mikisha Steel - SUPCRTX

**Subject:** Request for Extention of FMLA

Dear Ms. Boone:

I am writing to request an extension of FMLA per the guideline.  It is my sincere hope that you will grant my request.

Thanking you in advance for your time and consideration,
Frances Gilbert

J

Mikisha Steel

101 W. Jefferson 3rd Floor Law Library Ste B

Phoenix, AZ  85003


Frances Gilbert

319 E. Fillmore St.

Tempe, AZ  85281-1162


May 26, 2009


Dear Ms. Steel:


I am writing to request an extension of my medical leave and medical support as my current
FMLA benefits per your letter.  My FMLA leave will expire prior to the time I will be allowed to
return to work.  I have had to take quite a lot of time off already this year.  I am enclosing the
original FMLA documentation that you received via fax on May 13, 2009.  As we have
previously discussed, I have already requested an extension of FMLA in an electronic format on
May 7, 2009.  I absolutely intend to maintain my health care benefits; they are critical during
medical situations.  I will also comply with any standard guidelines or requirements necessary to
facilitate this request.


Thanking you in advance for your time and consideration,


Frances Gilbert


FMLA forms, original



# SUPERIOR COURT • JUVENILE PROBATION DEPARTMENT
## Maricopa County

DURANGO FACILITY – 3131 West Durango Phoenix, AZ 85009-6292 – (602) 506-4011 – (602) 506-4143 (TTD)
SOUTHEAST FACILITY – 1810 South Lewis Street Mesa, AZ 85210-6234 – (602) 506-2619 – (602) 506-2260 (TTD)

CAROL L. BOONE – Chief Juvenile Probation Officer

June 5, 2009                                    **Via Certified and Regular U.S. Mail**

Ms. Frances Gilbert
319 E Fillmore St
Tempe, AZ 85281

Dear Ms. Gilbert:

I am in receipt of your letter dated May 7, 2009 requesting a medical leave of absence until May 1, 2010. I am also aware that Human Resources received medical documentation supporting your request.

Per Superior Court policy P 305-D, Section VIII, Paragraph A, I am exercising my discretion as Appointing Authority to deny your request for additional time through May 1, 2010.

You will have exhausted your 12-weeks of FMLA on May 28, 2009. In reviewing the most recent medical information received, your provider indicated that it is necessary for you to be out until May 2010 at which time you may be re-evaluated. You may be eligible for Long Term Disability benefits through the Arizona State Retirement System (ASRS). Please contact Esther Winter at (602) 506-1113 for more information.

This is notice of our action to separate you without prejudice, effective June 5, 2009, in accordance with Judicial Merit System Resolution, Section 16 (D). This provision states:

> Inability for medical reasons is cause to dismiss but connotes no improper conduct on the part of the employee nor does it contemplate corrective or progressive steps. An employee who is separated without prejudice and released from his or her position with the Court Service, may be reinstated by the appointing authority within one year, as provided under the Judicial Merit Rules.

In addition, be aware that Judicial Merit System Rule 11.01(B) provides:

> An employee separated without prejudice from the Court Service may request a review of circumstances by the Judicial Merit Commission within ten (10) calendar days of receipt of a written notice of release from employment by the appointing authority. Based on the findings of this review, the Commission may determine to grant the employee an appeal.

Ms. Frances Gilbert
May 26, 2009
Page 2 of 2

If you choose to request a review of circumstances, please submit your written notice to:

Judicial Branch Human Resources
101 W. Jefferson St. 3rd Floor Law Library
Phoenix, AZ 85003
Attn: Phillip Hanley, Director

To avoid financial responsibility for County equipment, please make arrangements with your supervisor to turn in keys, ID badges, and any other public property in your possession. Should you have any questions, please call Mikisha Steel, Judicial Branch Human Resources Specialist, at (602) 372 – 0380.

Sincerely,

Carol L. Boone
Chief Juvenile Probation Officer

cc:    Lori Ash, General Counsel
       Jamie Harding, Assistant Attorney General
       Phillip Hanley, Judicial Branch Human Resources Director
       Gary Bridget, Employee Relations Administrator
       Medical File

L

# BIHN & McDANIEL, P.L.C.
ATTORNEYS AT LAW

SUITE 200
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012
602 248 9779
FAX 602 248 9749

MARTIN A. BIHN
e-mail: MBihn@phxlegal.com

DONNA M. McDANIEL
e-mail: Donna.McDaniel@azbar.org

June 9, 2009

Phillip Hanley
Director of Human Resources
East Court Building
101 West Jefferson, 3rd Floor Law Library
Phoenix, Arizona  85003

> RE:  *Request for a Review of Circumstances*
> *Frances Gilbert – Juvenile Probation Department*

Dear Mr. Hanley:

This firm has been retained to represent former Maricopa County Juvenile Detention Officer **Frances Gilbert** with regard to her separation without prejudice.  In accordance with Judicial Merit System Rule 11.01(B) we are requesting a review of the circumstances of the separation.

The issues that we believe relevant to the review are as follows:

1.  Ms. Gilbert suffers from a number of physical ailments but believed they might sufficiently resolve to allow her to return to work if granted a 12 week extension of her FMLA leave.

2.  Ms. Gilbert did request an extension of her FMLA leave.

3.  On at least one occasion in the past, the Department has granted Ms. Gilbert a 12 week extension of her FMLA leave.

4.  Ms. Gilbert believes that other Department employees have similarly received FMLA extensions.

5.  Ms. Gilbert's extension request was denied by the Department.

6.  In denying Ms. Gilbert's request, the Department indicated that Ms. Gilbert had asked for a one-year extension (until May of 2010).  Ms. Gilbert's request letter (attached hereto) does not reflect a request for a 1 year extension but simply an "FMLA extension."

Mr. P. Hanley
Page 2
June 9, 2009

    7.    Ms. Gilbert is asking for a 12 week extension and believes the denial of her request violates Merit Rules and Department policy.

We are requesting that a review of circumstances be conducted and an appeal be granted by the Judicial Merit Commission.

Best regards,

BIHN & MCDANIEL, PLC

Martin A. Bihn

M

From: Martin Bihn

[Print] [Close]

From:    "Martin Bihn" <mbihn@phxlegal.com>
To:      <fabgilbert@att.net>
Cc:      '"John Stair'" <johnstair@yahoo.com>
Subject: RE: Frances Gilbert Findings and Recommendation
Date:    Monday, July 20, 2009 1:47:05 PM

FYI,

     Sent this to Hanley to try to get an early Merit hearing

MARTIN A. BIHN, ESQ.

BIHN & McDANIEL, PLC
2600 N. CENTRAL AVE., SUITE 1775
PHOENIX, ARIZONA 85004
602.248.9779
602.248.9749 (FAX)

CONFIDENTIALITY NOTICE

This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and is legally privileged. The information contained in this Email is intended for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or duplication of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone (602-248-9779), and destroy the original message. Thank you.

-----Original Message-----
**From:** fabgilbert@att.net [mailto:fabgilbert@att.net]
**Sent:** Sunday, July 19, 2009 9:29 AM
**To:** Martin Bihn
**Cc:** John Stair
**Subject:** Re: Frances Gilbert Findings and Recommendation

Martin,
Thank you for sending this.  The part that I find particularly interesting is that no one seems to know how to read the FMLA form.  Page 3 is where it states AMOUNT OF LEAVE NEEDED and this refers the matter to my pain specialist.  On the first page where conditions are listed as having commenced more than 20 years ago is it reasonable to expect that they would resolve in 12 weeks?  There is no place on the form that indicates that my condition (the reason I am unable to work) will not resolve so I can return to work within 12 weeks.

Regarding the conditions mentioned on the first page of the FMLA form, the hand pain is quiet terrible, and I would not be able to do a lot of work at a computer for long periods of time--that is not a part of my job.  The compromised immune system and the chronic lung infection which has lead to the violent vomiting and coughing is the result of one of the ways I am being attacked at work on a regular basis and it is happening with the full knowledge and cooperation of management and the Human Resources Department.  This situation has caused me to use FMLA time and has even resulted in my having to be hospitalized.

When I complained to Mikisha Steel that I "was being attacked at work" she is the one

that suggested taking a year off as a way to stop the attacks. Something I found ridiculous! Why should I leave my job because I'm being victimized? I Spoke with Gary Bridget March 9, 2009 regarding the two (2) EEOC complaints I had filed; he recorded the conversation & promised me a copy of the recording that he has not yet provided me. The conversation included that I was being attacked at work. So here I am just trying to go to work and thankfully the HR department aren't the police because in effect if I was just trying to go home thugs would be living in my house and I'd be in jail or on the street.

**My hope is that the board will be held soon as my belief is that by delaying it past the 12 weeks the argument might be made that since I am still on disability I would not have been able to have returned to work and therefore the point is moot. In the mean time I would have been denied the means to have returned to work on a part-time basis and/or on light duty.**

Regarding light duty; last year I dislocated my left knee. I went back to work and re-injured my knee. I returned to work with a doctor's note requesting light duty, limited stairs & walking. I was assigned as usual and re-injured my knee and had to be off work for a week. I returned with a doctor's note calling for light duty; no stairs & limited walking. I was assigned as usual. I re-injured my knee, this time so extensively that it wouldn't stay in and I had to be off work for more than a month. After this a policy change came out stating that light duty requests would not be honored and that it would be at the discretion of the management team, people might have to remain off work. Shortly, however, a young man with a broken leg spent day after day sitting at Central Post, an accommodation that could have easily been made for me--except I'm not young, I'm not male, and I doubt he's being actively retaliated against. I think that it is reasonable that the FMLA time that I needed to use due to being re-injured because my employer failed to make the appropriate accommodations should be restored to my FMLA bank.

As this goes on I am unemployed. I have to provide my own medical insurance. Maricopa County has informed the COBRA provider that I am not eligible for the stimulus package (ARRA Premium Reduction). The only reasons appear to be that 1. Loss of employment was voluntary; 2. The involuntary loss did not occur between September 1, 2008 and December 31, 2009; 3. Individual did not elect COBRA coverage; Other. I have sent an appeal to with the documentation I felt appropriate and a request that if the appeal was not granted that I be informed of the reason so I could address the reason appropriately; there was no reason given by the employer. I did elect COBRA coverage, it's between the dates & what kind of drugs do you have to be doing to think I voluntarily left my employment? Another great dig at me to the tune of almost $1000 a month, and that's after I stopped the flexible spending account so a lot more than that has been coming out of the disability checks (none of which I have signed or cashed). I paid four (4) months of COBRA and they wouldn't take a 35% payment because my employer said I wasn't eligible for the stimulus package even though I was looking at the Federal form and saw no criteria I didn't meet. Now someone has a lot of my money and I never age anyone permission to make those deductions to start with and the deductions seem to start rather early and for some unexplainable amounts.

There are a few things I'd like to have you bring up at the Board and I'd like the Board to happen sooner than later. I do not check my e-mail often, I hurt my neck and I have the hand issue. The most effective way to contact me is by phone, 480-452-5325.
Frances

-------------- Original message from "Martin Bihn" <mbihn@phxlegal.com>: --------------

**Frances & All:**

Attached are the findings of the hearing officer, - I'm guessing we also get to go to the full board on this.

The problem is that the hearing officer decided the medical separation was OK, - except that's not what he was hired to do, - under the rules he was only supposed to review to determine if Frances should get an appeal hearing—(the purpose of which is to determine whether the medical separation was appropriate)

Anyway I think we bring this up to the board

MARTIN A. BIHN, ESQ.

BIHN & McDANIEL, PLC
2600 N. CENTRAL AVE., SUITE 1775
PHOENIX, ARIZONA 85004
602.248.9779
602.248.9749 (FAX)

*CONFIDENTIALITY NOTICE*
*This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and is legally privileged. The information contained in this Email is intended for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or duplication of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone (602-248-9779), and destroy the original message. Thank you.*

**Attachment 1:** 20090720134223319.pdf (application/octet-stream)

N

## SETTLEMENT AGREEMENT AND RELEASE

THIS AGREEMENT and RELEASE is made and entered into this 21st day of

October, 2009, between Maricopa County Juvenile Probation Department ("JPD"), and Francis

Gilbert ("Appellant").

### RECITALS

A.      Appellant was medically released by letter dated June 5th, 2009.

B.      Appellant filed a Notice of Appeal with the Maricopa County Judicial Merit

System Commission on June 9, 2009

C.      Appellant desires to be reinstated to medical leave without pay status and to be

granted a medical leave of absence for six months from the start of her last leave period,

Appellant desires to be placed on medical leave up until November 4th, 2009. which began May 5, 2009. On November

4th, 2009, Appellant will be medically released.

D.      This Agreement is executed in the spirit of compromise, the parties desiring to

settle any issues, matters, and disputes arising from the dismissal of Appellant.  Further, JPD

does not, by ~~accepting this resignation~~ entering this Agreement nor does Appellant by ~~tendering this resignation~~ entering this Agreement, admit or

concur that either was engaged in wrongful conduct.

### NOW, THEREFORE, IT IS AGREED AS FOLLOWS:

1.      Withdrawal of Appeal.  Appellant agrees to withdraw her appeal / request for

review of circumstances of the medical release from the Judicial Merit System Commission (see

attached).  Appellant understands and agrees that she has no right to refile an administrative

appeal with the Judicial Merit System or with the court regarding this medical release.

2.      Waiver.  Appellant releases JPD, the State of Arizona, its officers and employees,

from any and all claims she may have as a result of this medical release.  Further, Appellant

expressly waives any legal rights she may have concerning receipt of notice of this medical

1

release, appeal of her medical release to the Judicial Merit System Commission, the Superior

Court or any other court or agency, and lawsuits or other legal actions for damages or other relief

in any state or federal court or governmental agency against the State of Arizona or any agency

thereof arising out of her medical release with JPD

3. <u>Release and Covenant Not To Sue</u>. Upon the execution of this Agreement,

Appellant covenants not to sue, and releases and forever discharges JPD, the State of Arizona,

and all employees, former employees, current and former officers and directors, agents,

commissioners, attorneys and other representatives of the State of Arizona including JPD, from

any and all claims, demands, causes of action and liabilities whatsoever, whether known or

unknown, which arise from Appellant's medical release and the events leading thereto other than

retirement and other normal benefits due. The parties agree that this waives Appellant's rights as

to all claims arising out of her employment with JPD prior to the date of this Agreement, and this

RELATING TO THIS MEDICAL RELEASE.

particular dismissal and complaint.

Similarly, upon the execution of this Agreement, JPD covenants not to sue, and releases

and forever discharges Appellant from any and all claims, demands, causes of action and

liabilities whatsoever, whether known or unknown, which arise from Appellant's medical release

and the events leading thereto other than the return of JPD property. This Agreement does not

preclude JPD from taking action to recover JPD property in Appellant's possession.

4. <u>Appellant's Return of JPD Property</u>. Appellant agrees to return any and all

outstanding property of JPD to JPD prior to the execution of this Agreement.

5. <u>Acknowledgment</u>. Appellant represents and acknowledges that she is of sound

mind and that she has had a full and fair opportunity to thoroughly read and review each

paragraph of this Agreement and consult with an attorney or other representative if she so

desires. Appellant represents that she understands the terms of this Agreement and that she is

2

knowingly and voluntarily entering into this Agreement of her own free will.

6.    <u>Arbitration and Cancellation</u>.  The parties may agree to use arbitration to resolve any dispute arising out of this Settlement Agreement and Release.

7.    <u>Entirety Clause</u>.  This Settlement Agreement and Release contains the entire agreement between Appellant and JPD with regard to the matter set forth in it and no statements, promises, or inducements not contained in this Settlement Agreement and Release shall be valid and binding.  This Settlement Agreement and Release may not be changed orally, but only in writing signed by all signatories.  If any of the provisions of this Settlement Agreement and Release shall be held or deemed invalid, the remainder of this Settlement Agreement and Release shall not be affected thereby, and shall remain in full force and effect.

8.    <u>Counterparts</u>.  This agreement may be executed in any number of counterparts, each of which shall be deemed a duplicate original.  Signature by facsimile is deemed the equivalent of the original penned signature on hard copy.

This Agreement is agreed to and accepted as of the date above first mentioned.

**APPELLANT**

Francis Gilbert

**JUVENILE PROBATION DEPARTMENT**

Carol Boone
Chief, Juvenile Probation Department

3

## WITHDRAWAL OF APPEAL

I, Francis Gilbert, hereby withdraw my appeal of my medical release from Juvenile Probation Department to the Maricopa County Judicial Merit System Commission.

_____
Francis Gilbert

Phx-#541462

4



[Print] [Close]

From:  fabgilbert@att.net
To:  "Victor Marino - EHIX" <marinov@mail.maricopa.gov>
Cc:  bridgetg@superiorcourt.maricopa.gov (Gary Bridget)
Subject:  Flex Account
Date:  Thursday, November 12, 2009 7:17:10 PM

I have left messages on your voice mail and Gary Bridget's regarding the flexible spending account. I had no access to it before, but then I could bring my account information up and see that it showed the account end date of 6/4/2009; now I can not bring up any information at all. My understanding was that I would have access to the monies in the account. My understanding is that all receipts, etc. must be in by November 30th, 2009. Is there going to be any time before that date that the account will be available to me? Please let me know, I can be reached by phone at 480-452-5325.

Thanking you in advance for your time and consideration,
Frances

[Print] [Close]

From:  fabgilbert@att.net
To:  "Victor Marino - EHIX" <marinov@mail.maricopa.gov>
Subject:  RE: ADP/COBRA
Date:  Thursday, November 12, 2009 7:47:45 PM

Victor,
Is this per pay period, figured at 24 times a year vs. 26 for a bi-monthly rate, or some other increment?  Also would you please list the amounts that the County would be contributing as I will also need that information to figure the total amount of deductions for the 2009 year to check the COBRA for accuracy.  Do you then put everything into an annual rate and divide by twelve (12) to get a monthly amount or if you use a bi-monthly rate add the two (2) pieces to get the monthly rate?

Would you also check the information for accuracy & consistency.  I don't think my dental is 75% of my medical, or that my term life insurance is almost as much as my medical.  Maybe there's multiple time increments reflected in the rates instead of everything consistently being a pay period.  Thank you for making the Flexible Spending Account for 2009 zero ($0.00).  I sent an e-mail to you and copied it to Gary Bridget about the one for 2008--what a nightmare. Thank you for saving me from another round of the same thing and for all your efforts to resolve the issues that have landed at your door.
Frances

-------------- Original message from "Victor Marino - EHIX" <marinov@mail.maricopa.gov>: --------------

I spoke to the finance team today about your STD checks and premiums.  The finance manger is going to be giving you a call on the issue.  Sorry about the premiums, I had asked someone to send it to you on my behalf last Thursday.
June and prior
OPEN ACCESS PLUS HIGH OPT  14.58
CIGNA DENTAL                6.98
COINSURANCE PHARMACY        5.16
SUPP LIFE 3                 14.15
EMPLOYEE AD/D               0.82
SPND ACCT HLTH              134.34
SHORT TERM DIS              6.45

July and later
OPEN ACCESS PLUS HIGH OPT  16.73
CIGNA DENTAL                12.02
COINSURANCE PHARMACY        5.35
SUPP LIFE 3                 14.15
EMPLOYEE AD/D               0.82
SPND ACCT HLTH              0.00
SHORT TERM DIS              6.45


Victor Marino
Employee Health Initiatives

P602-372-7930
F602-506-2354

**"This message is brought to you by Maricopa County's Employee Health Initiatives Department"**


**From:** fabgilbert@att.net [mailto:fabgilbert@att.net]
**Sent:** Monday, November 09, 2009 8:00 AM
**To:** Victor Marino - EHIX
**Subject:** ADP/COBRA

Victor,
I received a check from ADP refunding the amount I paid for COBRA.  Please contact me as this was not what we had ultimately decided to do.  I have also not received the list of benefits & the cost for each for the benefit years 2008 and 2009.  Thought this e-mail path might make it easier to get it to me.
Frances

[Print] [Close]

From: fabgilbert@att.net
To: marinov@mail.maricopa.gov (Victor Marino), bridgetg@superiorcourt.maricopa.gov (Gary Bridget)
Cc: mbihn@phxlegal.com (Martin Bihn)
Subject: FW: need assistance
Date: Tuesday, November 24, 2009 2:13:33 PM

This is to let you know that Michelle has returned my call (a pleasant surprise). She tells me that the benefits enrollment information was sent to me in error. I will be getting new enrollment information from COBRA which I will need to fill out. When I asked about how I will be selecting the benefits for the period from July 1st to my termination in November she told me that was already done and based on what I had before. I expressed the same concerns about the life insurance as I have already voiced to you and was told she would put it in writing to Gary Bridget. This resolves the access to the online enrollment only.

-------------- Forwarded Message: --------------
From: fabgilbert@att.net
To: marinov@mail.maricopa.gov (Victor Marino), bridgetg@superiorcourt.maricopa.gov (Gary Bridget)
Cc: mbihn@phxlegal.com (Martin Bihn)
Subject: FW: need assistance
Date: Tue, 24 Nov 2009 18:19:29 +0000

The same problem as reported below persists. I have checked People Soft and get the following error message when attempting to log in, "Your account has been disabled". I can still log into the e-mail system and there is still no e-mail that has gone to me other than from the help desk. I have called the 602-506-1010 number again and this time spoken to a representative. I have been told 1) there is probably a problem because I was hired back and then dismissed again, 2) I could enroll by paper, 3) I have missed the 30 day deadline to enroll because I was rehired on October 21st, 4) she will speak to her supervisor and get back with me. Wouldn't that be nice?

----------- Forwarded Message: --------------
From: fabgilbert@att.net
To: bridgetg@superiorcourt.maricopa.gov (Gary Bridget), marinov@mail.maricopa.gov (Victor Marino),
Cc: mbihn@phxlegal.com (Martin Bihn)
Subject: need assistance
Date: Sun, 22 Nov 2009 22:48:15 +0000

I received a "2009/2010 Benefits Enrollment Worksheet" in the mail, stamped that it was mailed 11/19/2009, with enrollment instructions to "Enroll online at https://portal.adp.com by 12/07/2009". I had recorded my ID and password from the enrollment period and used that to log in but have received this error message after clicking on the link 'Benefit Enrollment System'--"There is a problem with the EmpID, cannot access WAVES" The enrollment directions state "6. Paper enrollment or late enrollment will not be accepted. Contact 602-506-1010 if you have enrollment questions." That is the same phone number where, if I have spoken to a person they have not resolved the issue (they transferred me), and no one has ever returned a message/call. I have already tried all the self help options and am at a loss. Please resolve this issue for me. I want the same benefits I have had all along:

Open Access Plus High  $46.73, Medical option code 004
Co-insurance Prescriptions $5.35, Pharmacy option code 001
EyeMed (with Med election)$0.00, Vision option code 001
CIGNA Dental $7.23, Dental option code 002
40% STD Coverage $6.42, Short Term Disability option code 001
and need to comply with this enrollment.

Also checked the ADP flexdirect and "Accounts At A Glance" still shows plan year
2008 having ended on 6/4/2009 and I have not been contacted by the finance
manager.  I can be reached by phone at 480-452-5325.

Thanking you in advance for you time and prompt attention,
Frances

Frances Gilbert

319 E. Fillmore St.

Tempe, AZ  85281-1162


January 12, 2010


Maricopa County Employee Benefits

301 S. 4th Ave., Suite B100

Phoenix, AZ  85003



Dear Sir or Madam:


Please find enclosed check for $638.38.  I am in receipt of an invoice, Invoice #11, dated 12/30/2009, demanding payment in that amount.  This conflicts greatly with many phone calls, face-to-face meetings, and e-mails where I have reported that deductions have been made from the short term disability payments I was issued that were in excess of what could reasonably be explained by medical deductions.  These monies were deducted at the direction of Maricopa County and I believe went to Maricopa County.  A review of the credits listed on said invoice confirms that these monies are not listed.  I have repeatedly been assured I would be given an audit and to date no one has contacted me to perform the audit and other issues also remain unaddressed.  I will, of course, take any action necessary to assure that my medical expenses are covered and remain so, etc. including being coerced to send addition monies when it is well known that I am and have been deprived of the use and benefit of thousands of dollars due to the actions of others and subsequent failures to correct them.


Sincerely,

Frances Gilbert

Frances Gilbert



CC:  Victor Marino